UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SPARKLE STIDWELL, by and through her Mother as next friend Deaunna Phillips, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No.: |
| v. | ) | 1:19-cv-401-MHC |
| | ) | |
| YASIN ABDULAHAD, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Two men know what happened when Officer Abdulahad shot Deaundre Phillips in the head. One is dead, and the other won't talk. Officer Abdulahad invoked the Fifth Amendment and refused to answer any question about his encounter with Phillips, including specific questions about why he initially seized Mr. Phillips, and why he shot and killed Mr. Phillips.

Although Officer Abdulahad now refuses to testify, his previous justifications for the shooting evolved over time. The disconnect between the physical evidence, coupled with his shifting explanations for the shooting, warrant the denial of summary judgment. When coupled with his invocation of the Fifth

1

Amendment and refusal to answer even simple and direct questions in his deposition, the disconnect is even more stark.

A jury could find that Officer Abdulahad fabricated the basis for Phillips' initial seizure and did not have have any justification for the use of deadly. Summary judgment should be denied.

## I.       STATEMENT OF FACTS

There was no basis for Officers Abdulahad and Robeson-El to confront Phillips. Defendant claims—even with the windows of the police car and of Phillips' car rolled up[1]—the air around the car in which Phillips was sleeping smelled of marijuana; that fact is disputed. The driver of the car stated that it did not smell like marijuana.[2]

During that illegal seizure, Officers Abdulahad and Robeson-El harassed Phillips, needlessly removed him[3] from the car in which he was resting, falsely

---

[1] Doc. 102-7, Robeson-El Dep. Vol. 1 at  110:16–111:1.
[2] Doc. 104-1, Exhibit 1, Hart Decl. at 1–2.
[3] Exhibit 3, Annex Video.avi ca. 0:12:03/0:24:00.

accused him of committing a crime,[4] and placed their hands on him to restrain him.[5]

In response to this initial use of force, Phillips retreated into the car.[6] Officer Abdulahad followed him into the car and Phillips began to drive away.[7] On the basis of the known facts, and the inferences that can be drawn from them, a jury could conclude that Officer Abdulahad quickly drew his gun, and ordered Phillips to stop.

After the shooting, the GBI arrived and took photographs as part of its investigation.[8] Those photographs show Phillips' foot on the brake, engaged the

---

[4] The officers accused Mr. Phillips of smoking marijuana, which Phillips denied. *See* Doc. 102-7, Robeson-El Dep. Vol. 1 at 121:20–23.

[5] *See* Doc. 102-7, Robeson-El Dep. Vol. 1 at 76:7–18. Abdulahad invoked his privilege against self incrimination in response to questions about what happened outside of the car. *See* Doc. 102-1, Abdulahad Dep. 84:16–17, 84:19–20, 88:17–20, 88:22–25.

[6] *See* Exhibit 3, Annex Video CH07(1).avi at 0:13:36/0:24:00. The video shows the two officers standing over Phillips, who is initially seated and then stands up. The officers actions are visible at the car, and also shown by the shadows cast on an adjacent building. The shadows of the officers are visible on the the left side of the video.

[7] Doc. 102-7, Robeson-El Dep. Vol. 1 at 76:7–18. Again, Abdulahad invoked the Fifth Amendment in response to questions about how he wound up in Phillips' car. For example, "And when he pulled back towards the interior of the car, you pushed him into the car; correct?" and, "And when you pushed him into the car, you continued after him; correct?" Doc. 102-1, Abdulahad Dep. 84:16–20.

[8] Doc. 102-6, Nixon Dep. 21:18–32:2.

emergency brake was engaged, and the transmission was in park, and Phillips door was ajar.[9] Abdulahad refused to answer how the car came to a stop.[10] Phillips is the only person who drover the car and the only person whose operation of the car could have brought it to a stop.

After the shooting, Robeson-El testified that Abdulahad was upset and crying.[11] Abdulahad's actions paint a different portrait. Shortly after the shooting, Abdulahad texted his wife and told her that he had shot and killed someone. Later, his wife asked him to take a selfie and send it to her. Abdulahad obliged, with the message "You know we doin some freakie shit tonight."[12] A jury could find this response is not consistent with Robeson-El's version of Abdulahad's reaction.

In the aftermath, Abdulahad claimed to his partner, Robeson-El,[13] and to GBI[14] that he shot Phillips because he saw a gun in the car (Abdulahad did not yet claim that Phillips was reaching for it). But the first responder on the scene, who

---

[9] Exhibits 10–14.

[10] For example, Abdulahad refused to answer the question "The car had come to a stop before you fired your weapon; had it not?" Doc. 102-1, Abdulahad Dep. 92:22–23.

[11] Doc. 102-7, Robeson-El Dep. 31:14–23.

[12] Exhibit 6.

[13] Doc. 102-7, Robeson-El Dep. Vol. 1 at  60:25–61:2; Doc. 102-8, Robeson-El Dep. Vol. 2 at  8:11–9:2.

[14] Doc. 96-2 at 13.

specifically looked in exact location Abdulahad claimed the gun to be located, did not see any gun.[15] And the driver of the car, Roderick Hart, testified via declaration that there was no gun in the car prior to the shooting and that Phillips did not possess a gun while inside the car.[16]

After the shooting, Abdulahad remained in close contact with his partner and close friend, Robeson-El.[17] In spite of a prohibition on speaking to a witness to an officer involved shooting,[18] the two continued to socialize regularly and were in frequent contact with each other.[19]

Robeson-El initially invoked the Fifth Amendment when asked what Abdulahad said to him after the shooting.[20] Robeson-El later claimed, incredibly, that he did not hear the gunshot fired by Abdulahad, and did not see anything that happened inside the car, and does not know how the car came to a stop.[21]

---

[15] Doc. 102-4, Glover Dep. 30:5–13, 30:20–31:7, 40:10–12.

[16] Exhibit 1, Hart Decl. at 1–2.

[17] Doc. 102-7, Robeson-El Dep. Vol. 1 at  54:11–13, 52:17–19. *See also* Exhibit 15, Abdulahad Search Warrant (summarizing the increased communications between Abdulahad and Robeson-El following the shooting).

[18] Doc. 102-7, Robeson-El Dep. Vol. 1 at  81:3–17, 82:23–83:7.

[19] *Id.*

[20] *Id.* at 56:2–58:11.

[21] *Id.* at 75:16–18.

Later, in an interview with Atlanta's internal affairs unit, Abdulahad added a new reason justifying the use of deadly force: he was being dragged along the car with the door open and his foot out.[22] Video evidence shows that claim was false.[23]

Abdulahad's claim about the gun also changed over time. Originally, Abdulahad stated only that he saw a gun.[24] Taking advantage of the fact that Phillips was dead, Abdulahad changed his story to claim that Phillips somehow was reaching for the gun with one hand, while driving with the other, and Abdulahad shot Phillips to prevent Phillips from reaching the weapon.[25]

In spite of making statements about the shooting to two different law enforcement agencies, Abdulahad then refused to answer specific and direct questions about his encounter with Phillips during his deposition. He invoked the Fifth Amendment to avoid answering specific questions such as whether Phillips had stopped the car and started to open the door before Abdulahad shot him,

---

[22] Doc. 104-1, Ex. 13, Abdulahad APD Interview Transcript at 5–6.

[23] Exhibit 3, Annex Video.avi at 0:13:08/0:24:00.

[24] Officer Abdulahad did not tell the GBI investigator at the scene that he saw Phillips reach for a gun when he explained why he shot Phillips, nor did he state that he was stretched out across the vehicle, or trying to hold on, as Phillips was driving. Doc. 96-2 at 13.

[25] Doc. 104-1, Ex. 13, Abdulahad APD Interview Transcript at 7:313–8:317.

whether he really smelled marijuana,[26] and whether he or his partner went back into Phillips' car after the shooting,[27] and before other officers secured the scene.[28]

Abdulahad's motion for summary judgment should be denied.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making that determination, a court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under this standard, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 659 (2014).

## III.   ARGUMENT AND CITATION OF AUTHORITY

Plaintiff's complaint states two claims: that Officer Abdulahad effected an illegal *Terry* stop by detaining Phillips without reasonable suspicion,[29] and that

---

[26] Doc. 102-1, Doc. 102-1, Abdulahad Dep. 48:12–14.

[27] Doc. 102-1, Abdulahad Dep. 49:5–7.

[28] *Id.* at 49:5–17.

[29] Defendant does not raise the issue of causation in his summary judgment brief, and Plaintiff therefore does not address it. Plaintiff notes that in *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000), the Eleventh Circuit held that a jury could determine that a fatal shooting was the reasonable foreseeable consequence of an illegal traffic stop based on the principle that § 1983 defendants are responsible for the natural and foreseeable consequences of their actions stemming

Abdulahad used excessive force when he shot and killed Phillips. Summary judgment should be denied as to both claims.

### A. The determination of whether Abdulahad illegally seized Phillips rests on disputed facts

Defendant does not dispute that Phillips was subjected to a Fourth Amendment seizure when the Officers approached the vehicle in which he was seated and ordered him to exit the vehicle. *See* Doc. 96 at 11–12 ("Abdulahad initiated an investigatory stop of Mr. Phillips . . . ."). Once Phillips complied with the order and stood alongside the car, he was not free to leave. *See* Robeson-El Dep. 36:2–12.

Any such seizure must be supported by reasonable suspicion. The question is whether an official had reasonable suspicion as "an objective question viewed from the standpoint of a reasonable official at the scene" and based on the totality of the circumstances. *Hicks v. Moore*, 422 F.3d 1246, 1252 (11th Cir. 2005) (quotation and internal marks omitted). In undertaking the reasonable suspicion inquiry, this Court must examine the totality of the circumstances to determine

_____

from an illegal seizure. *See also Hooks v. Brewer*, No. CV 316-023, 2018 WL 10149641, at *17 (S.D. Ga. Jan. 29, 2018) (holding that a claim for damages arising from the shooting death of a homeowner could be recovered in a claim stemming from an illegal entry into the home), *aff'd in part, rev'd in part and remanded on other grounds*, 818 F. App'x 923 (11th Cir. 2020).

whether an officer had a "particularized and objective" basis to support his suspicion. *Brent v. Ashley*, 247 F.3d 1294, 1303 (11th Cir. 2001). Although the 'reasonable suspicion' standard is less demanding than probable cause, it must be more than an 'inchoate and unparticularized suspicion or hunch.'" *United States v. Simmons*, 172 F.3d, 775, 779 (11th Cir. 1999) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

Defendant's sole justification for Phillip's initial seizure was the smell of marijuana. If there was no smell, then the seizure was illegal. A jury could reject Abdulahad's statement that Phillips' car smelled like marijuana based on the following:

At the time the Officers approached Phillips, the car in which he was seated was legally parked, and there was no prohibition on Phillips being seated in the passenger seat of the parked car. Doc. 102-7, Robeson-El Dep. Vol. 1 at  108:8–109:16. He not suspected of committing any crime

Moreover, it was not feasible for Abdulahad to smell marijuana when he first claimed to smell it. He claimed he could determine the source of the smell of marijuana with the windows of his car rolled up, and shortly after arriving in the

parking lot.[30] At that time, not even Robeson-El shared his suspicion.[31] After he

exited his car, Officer Abdulahad did not stop to investigate or approach Phillips'

car; instead, he began walking past the car and toward the entrance to the Annex.[32]

This inconsistent with the actions of an officer who believes a person is smoking

marijuana on police property

The driver of Phillips' car, who had left the car just minutes earlier, averred

that the car did not smell like marijuana and that no one smoked marijuana in the

car.[33] Phillips was not smoking marijuana, and no other witness who arrived on the

scene after the shooting claimed to smell of marijuana.[34] Finally, Abdulahad

invoked the Fifth Amendment in response to simple and direct questions about

whether he smelled marijuana.[35]

### 1. *The law is clearly established that officers cannot fabricate the basis of a Fourth Amendment seizure*

When an official asserts qualified immunity for an alleged Fourth

Amendment violation, generally the question is not whether the official had actual

---

[30] Doc. 102-7, Robeson-El Dep. Vol. 1 at 110:16–111:1.

[31] *Id.* at 111:2–18.

[32] Exhibit 3, Annex Video.avi at 0:12:03/0:24:00.

[33] Exhibit 1, Hart Decl. at 1–2.

[34] *See, e.g.*, Doc. 102-4, Glover Dep. 40:10–12.

[35] Doc. 102-1, Doc. 102-1, Abdulahad Dep. 48:12–14.

reasonable suspicion, but whether the official had "arguable" reasonable suspicion. *Jackson*, 206 F.3d at 1166. The court considers the totality of the circumstances "in light of the officer's own experience" and determine "whether the officer can point to specific and articulable facts which, taken together with rational inferences from those facts" support an "objectively reasonable suspicion that [the defendant] had engaged . . . in a crime." *United States v. Caraballo*, 595 F.3d 1214, 1222 (11th Cir. 2010) (quotation marks omitted, alteration in original). Though reasonable suspicion is a less demanding standard than probable cause, the Fourth Amendment nonetheless requires a minimum level of objective justification for an official to make a *Terry* stop which must exist at the onset of the stop. *Hiibel v. Sixth Judicial Dist. Ct. of Nev.*, 542 U.S. 177, 188 (2004).

Regardless of how the question is framed, the fundamental question is whether the law is clearly established that every reasonable officer would know that a seizure was not permitted. "[T]o defeat qualified immunity a rule must be specific enough that an act's unlawfulness 'follow[s] immediately from the conclusion that the rule was firmly established' . . . ." *Piazza v. Jefferson Cty., Alabama*, No. 18-10487, 2019 WL 2049785, at *6 (11th Cir. May 9, 2019) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018)).

Viewed in the light most favorable to Plaintiff, a jury could find that Abdulahad fabricated the basis for Phillips initial seizure. Courts have repeatedly held that officers cannot fabricate evidence. *See, e.g.*, *Williams v. Aguirre*, 965 F.3d 1147, 1166 (11th Cir. 2020) (finding that a jury could infer that officers lied about their justification for the use of force based on the officers' shifting narrative surrounding the shooting); *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004) (holding that officers' actions during and after an arrest provided circumstantial evidence that the officers fabricated evidence); *Goldring v. Henry*, No. 19-13820, 2021 WL 5274721, at *4 (11th Cir. Nov. 12, 2021) (denying qualified immunity on the basis that a jury could find that two officers fabricated the basis for the plaintiff's arrest and prosecution). No officer could believe that the Constitution permits a *Terry* stop based solely on fabricated evidence. *Cf. Whren v. United States*, 517 U.S. 806 (1996). No reasonable officer could believe it is acceptable to detain a person without reasonable suspicion and based on what the officer knows is a false accusation.

Summary judgment should be denied because a jury could find that Officer Abdulahad illegally seized Plaintiff.[36]

---

[36] The extent of Plaintiff's damages presents a question of causation not raised by Defendant. As noted, the extent of Plaintiff's damages arising from that

**B.     The determination of whether Abdulahad used excessive force
         rests on disputed facts**

Plaintiff's complaint also states a separate claim for excessive force under

the Fourth Amendment. The force at issue is the gunshot fired into the head of

Deaundre Phillips while both he and Officer Abdulahad were inside the vehicle

driven by Phillips.

Claims of excessive force during a seizure are evaluated under the Fourth

Amendment. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). The question is whether

an objectively reasonable officer would have used deadly force under the facts and

circumstances of this case. *Garner* articulated several factors to be considered in

evaluating the reasonableness of using deadly force:

> Thus, if [1] the suspect threatens the officer with a weapon or [2] there
> is probable cause to believe that he has committed a crime involving
> the infliction or threatened infliction of serious physical harm, deadly
> force may be used [3] if necessary to prevent escape, and if, [4] where
> feasible, some warning has been given.

471 U.S. at 11–12. *Graham v. Connor*, 490 U.S. 386 (1989), expanded upon the

*Garner* factors listing three additional considerations: "the severity of the crime at

issue," "whether the suspect poses an immediate threat to the safety of the officers

_____

seizure is a matter for the jury to determine based on the application of common
law tort principles. *See Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000).

13

or others," and "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

Before proceeding with the *Graham* analysis, the facts must be construed in the light most favorable to Plaintiff. Defendant's that he was an "unwilling passenger in a car that was headed toward a hill and a fence, the driver was also within arm's reach of a firearm," *see* MSJ Br., Doc. 96 at 13, misstates the facts before the Court; instead, it relies on misconstrued facts and and inadmissible evidence.

### 1. As the only surviving witness, Officer Abdulahad's assertion of the Firth Amendment must be construed against him

Abdulahad is the only surviving witness because Phillips is dead. Courts have widely recognized that when "the witness most likely to contradict [the police officer's] story-the person shot dead-is unable to testify . . . the court may not simply accept what may be a self-serving account by the police officer." *O'Bert ex rel. Est. of O'Bert v. Vargo*, 331 F.3d 29, 35 (2d Cir. 2003). In these cases, the decedent's version of events must necessarily be constructed circumstantially from competent expert and physical evidence, as well as from inconsistencies in the testimony of law enforcement. *George v. Morris*, 736 F.3d 829 (9th Cir. 2013). *See also Maravilla v. United States*, 60 F.3d 1230, 1233-34 (7th Cir. 1995) (where "the

14

witness most likely to contradict the officers' testimony is dead," the court should "examine all the evidence to determine whether the officers' story is consistent with other known facts"). *See also Williams v. Deal*, 659 F. App'x 580, 583 (11th Cir. 2016).

The situation here is more complicated. Plaintiff cannot determine if Abdulahad's testimony is "consistent with other known facts" because Abdulahad invoked his Fifth Amendment right against self-incrimination in response to any question about this incident.

An adverse evidentiary inference may be drawn against a party who refuses to testify on that basis alone. And although such adverse inference standing alone is not sufficient to warrant summary judgment, summary judgment is appropriate if supported by other evidence. *Baxter v. Palmigiano*, 425 U.S. 308, 317–18 (1976); *Avirgan v. Hull*, 932 F.2d 1572, 1580 (11th Cir.1991); *S.E.C. v. Scherm*, 854 F.Supp. 900, 904–05 (N.D. Ga. 1993). If there is other evidence to support the Plaintiff's version of events then the inference requires the case to be submitted to a jury. *See Anderson v. City of Rockford*, 932 F.3d 494, 511 (7th Cir. 2019) (finding that an adverse inference arising from an officer's the invocation of the Fifth Amendment, coupled with the underlying factual record, met the plaintiff's

15

summary judgment burden). *Compare White v. Polk Cty.*, 207 F. App'x 977, 979

n.6 (11th Cir. 2006) ("We are not persuaded—in the absence of even a scintilla of

other evidence that Officer Lawson intended to harm White—by Plaintiffs'

assertion that, because Officer Lawson invoked his Fifth Amendment privilege and

did not answer a deposition question about whether he intended to harm White and

Jacoby, we should infer that Officer Lawson did intend such harm.").

Here, there is substantial reason to doubt Abdulahad's justifications for the

use of force. For example, Abdulahad twice claimed to law enforcement

investigators that he smelled marijuana. Yet at his deposition, when under oath, he

refused to answer the question. Similarly, he previously claimed that Phillips was

*reaching* for a gun. But at his deposition, when under oath, he refused to answer

the question of whether Phillips had stopped the car and was in the process of

opening his door when Abdulahad shot him.

Unlike the officer in *White*, who refused to answer a single vague question,

Abdulahad refused to answer specific questions about each aspect of his encounter

with Phillips. The questions were so specific that the only inference that a jury can

make from his conduct is that Abdulahad shot Phillips without any justification.

### 2. *Defendant's justifications for the use of deadly force are not supported by admissible evidence*

"Those who choose to remain silent 'must bear the consequence of a lack of evidence.'" *Arango v. United States Dep't of the Treasury*, 115 F.3d 922, 927 (11th Cir. 1997). In refusing to testify, Abdulahad refused to answer simple and direct questions about this encounter with Phillips. The effect is there no sworn testimony about what happened in the car before Abdulahad shot Phillips.

Abdulahad skirts this issue by relying on an investigative summary produced GBI, who was changed with investigating the shooting. Specifically, he seeks to introduce summaries of unsworn statements he made to GBI investigators for the purported truth of what he told the GBI. The problem for Defendant is reports of his statements are hearsay under Rule 803. While *Plaintiff* may introduce those statements against Abdulahad under Fed. R. Evid. 801(d)(2), or use those statements for impeachment purposes under 801(c)(2), Defendant may not introduce his own out-of-court statements for the truth of the matter asserted. Indeed, the form in which Defendant seeks to introduce his version of events it is double hearsay. Abdulahad had the opportunity to provide sworn testimony and declined to do so.

### 3. *Abdulahad's justifications present a shifting narrative which itself creates a disputed issue of fact concerning whether the shooting was justified*

Courts have recognized that an officer's shifting narrative when justifying the use of force can create an issue for trial. *See, e.g.*, *Williams v. Aguirre*, 965 F.3d 1147, 1166 (11th Cir. 2020); *Goldring v. Henry*, No. 19-13820, 2021 WL 5274721, at *4 (11th Cir. Nov. 12, 2021) (finding a jury could reject an officer's testimony based on inconsistencies in the officer's version of events).

Abdulahad's past statements are inconsistent and show that he has relied upon an evolving narrative to justify his use of force. He initially claimed to see a gun, then claimed Phillips was reaching for the gun. He later claimed to be dangling out of the side of the car, in spite of never mentioning that fact when he relayed his initial version of events. More fundamentally, he claims there was a gun in the car that a first responder did not see,[37] that the car's driver swore was not there,[38] but that appeared in the car before GBI arrived.[39]

---

[37] Doc. 102-4, Glover Dep. 28:24–31:7.
[38] Exhibit 1, Hart Decl. at 1–2.
[39] Exhibit 14 (showing the location of the gun when photographed by GBI investigators).

18

### 4.    *A jury could find that, at the time Abdulahad shot and killed Phillips, any threat to Abdulahad had abated and he was not in imminent danger*

While the *Graham* factors are useful, they should not be applied mechanically. *See Penley v. Eslinger*, 605 F.3d 843, 849–50 (11th Cir. 2010). No matter how the question is framed, the court must "slosh [its] way through the factbound morass of 'reasonableness.'" *Scott v. Harris*, 550 U.S. 372, 383 (2007). Fundamentally, "[w]here the suspect is not a fleeing felon and poses no immediate threat to the officer or others, the use of deadly force is a violation of the suspect's Fourth Amendment rights." *Harrell v. Decatur County*, 22 F. 3d 1570, 1573 (11th Cir. 1994), *vacated on other grounds*, 41 F.3d 1494 (1995) (en banc). *See also Garner*, 471 U.S. at 7 ("A police officer may not seize an unarmed, non-dangerous suspect by shooting him dead."). Construing the evidence in the light most favorable to Plaintiff, Phillips was unarmed and the danger to Abdulahad abated before he shot and killed Phillips.

The conclusion that Abdulahad violated the Fourth Amendment is clear when applying the *Graham* and *Garner* factors set forth, supra.

*The severity of the crime at issue*. Here, there was no underlying offense. At the time that Phillips was standing alongside the car, before being grabbed by

19

Abdulahad at Robeson-El's direction, he was not engaged in any criminal behavior.[40] Phillips was the subject of an illegal seizure, and he had the right to flee from it. *See Thomas v. State*, 91 Ga. 204 (1892) ("Every man, however guilty, has a right to shun an illegal arrest by flight. The exercise of this right should not, and would not, subject him to be arrested as a fugitive."); *Glenn v. State*, 310 Ga. 11, 29 (2020) (recognizing that a person may damage government property in an attempt to resist an unlawful arrest). Moreover, Phillips did not punch, kick, or otherwise attack the officers.[41] *Compare Cantu v. City of Dothan, Alabama*, 974 F.3d 1217, 1230 (11th Cir. 2020) ("This is not a case in which the suspect aggressively or violently fought against being arrested. To be sure, Lawrence did resist being handcuffed and taken into custody. He wrestled with the officers, broke free twice, and ran around the car as they chased him. But resisting arrest alone is not enough to justify the use of deadly force.")

*Whether the suspect poses an immediate threat to the safety of the officers or others*. The outcome of this factor depends entirely on what a jury believes happened just before Abdulahad shot Phillips. If Phillips was slowing the car,

---

[40] Doc. 102-7, Robeson-El Dep. Vol. 1 at 124:18.
[41] *Id.* at 30:12–31:2.

disengaging, and following instructions, then he posed no threat. The parking lot was otherwise empty.

*Whether he is actively resisting arrest or attempting to evade arrest by flight.* Again, the same disputed facts govern this analysis. Failure to comply with an officer's instructions without physical violence does not constitute active resistance. *See Calderin v. Miami-Dade Police Dep't*, 600 F. App'x 691, 695 (11th Cir. 2015).

*Whether the suspect threatens the officer with a weapon.* There is an issue of fact as to whether there was a gun in Phillips car. This factor can therefore cannot favor Defendant. Moreover, the mere presence of a weapon is not sufficient to justify the use of deadly force. *See Turk v. Bergman*, 685 F. App'x 785, 788 (11th Cir. 2017) (holding an officer who used deadly force against a motorist who held a gun in his lap was not entitled to qualified immunity). *See also Daugherty v. Hurst*, 491 F. Supp. 3d 1214, 1225 (S.D. Ala. 2020), *appeal dismissed*, No. 20-14028-HH, 2021 WL 1651570 (11th Cir. Feb. 5, 2021) ("There is conflicting evidence as to whether a gun existed or even if it did, whether Moore made any movement which could reasonably be construed as reaching for his gun.").

*Whether there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm.* Again, there is no evidence that Phillips intended to harm Abdulahad. Abdulahad suffered no injury, and there is no indication that Phillips actively sought to harm Abdulahad or that Phillips did not disengage immediately after pulling out of the parking lot.

*Whether the suspect was trying to escape.* As stated, a jury could find that Phillips was attempting to escape an illegal seizure. Furthermore, the duration of Phillips' flight is a matter to be decided by a jury.

*Where any warning was provided.* Abdulahad refused to answer questions about what happened in the car, and his failure to answer direct questions such as: "And you shot him not because he was then threatening you, but because he was trying to get out of the car."[42] And, "He was pleading with you to put the gun down; wasn't he?"[43] And, "You did not tell him that if he did not stop the car, you were going to shoot; did you?"[44]

---

[42] Doc. 102-1, Abdulahad Dep. 91:8–10.
[43] *Id.* at 91:23–24.
[44] *Id.* at 92:4–5.

### 5. *Abdulahad is not entitled to qualified immunity because a jury could find that Phillips was unarmed and posed no threat when Abdulahad shot and killed him*

"*Garner* clearly established that Mr. Smith had a right to be free from deadly force when he was not threatening the officers, was merely suspected of misdemeanor offenses, and was attempting to escape." *Smith v. LePage*, 834 F.3d 1285, 1297 (11th Cir. 2016) (citing *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). *See also Perez v. Suszczynski*, 809 F.3d 1213, 1222–23 (11th Cir. 2016) (holding that shooting a compliant suspect is "so inherently violative of the Fourth Amendment that it should be obvious to any reasonable officer that this conduct was unlawful" even without pre-existing case law).

For example, in the context of an excessive force claim by a pretrial detainee, the Eleventh Circuit has held, in no uncertain terms, that "[w]hen jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive." *Danley*, 540 F.3d at 1309. *See also Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002) ("[G]overnment officials may not use gratuitous force against a prisoner who has been already subdued . . . ."); *Williams v. Burton*, 943 F.2d 1572, 1576

23

(11th Cir. 1991) ("The basic legal principle is that once the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth and Fourteenth Amendments."); *Ort v. White*, 813 F.2d 318, 326–27 (11th Cir. 1987) ("A [F]ourteenth [A]mendment violation occurs . . . where prison officers continue to employ force or other coercive measures after the necessity for such coercive action has ceased.").

If a jury finds that Phillips disengaged by slowing the car, attempting to flee, following orders, or then Abdulahad is not entitled to qualified immunity. An officer cannot shoot a suspect in the head when that suspect is complying with the officer, even if the suspect previously attempted to flee.

"In analyzing excessive force cases, it is important to understand not only what force was applied but when it was applied. If gratuitous force was applied after the suspect was subdued or otherwise cooperating, qualified immunity will likely not apply, unless the force is de minimis." *Merricks v. Adkisson*, 785 F.3d 553, 563 (11th Cir. 2015) ("There is substantial case authority in the Supreme Court and this Circuit clearly establishing that harming a suspect after that suspect is compliant, cooperative, under control, or otherwise subdued is gratuitous and,

therefore, constitutionally excessive."). This rule applies even to a "previously

fractious" arrestee. *Smith v. Mattox*, 127 F.3d 1416, 1418 (11th Cir. 1997).

### C. Conclusion

Officer Abdulahad should not be allowed to escape trial by refusing to testify

about the reason he shot Deaundre Phillips in the head. Given Abdulahad's

inconsistent explanations, the physical evidence, questions as to his credibility, and

the adverse inference arising from his refusal to testify, a jury could find that he

seize Phillips without any justification to do so, and used excessive force after any

threat posed by Phillips had abated.

Plaintiff respectfully requests this Court deny Defendant's motion for

summary judgment.

Submitted this 19th day of November, 2021.

**L. Chris Stewart**
Georgia Bar No. 142289

**Dianna Lee**
Georgia Bar No. 142289

Stewart Miller Simmons
55 Ivan Allen Blvd., NW, Suite 700
Atlanta, GA 30308
844.874.2500
cstewart@smstrial.com
dlee@smstrial.com

**Brian Spears**
Georgia Bar No. 670112

**Jeff Filipovits**
Georgia Bar No. 825553

Spears & Filipovits, LLC
1126 Ponce de Leon Ave. NE
Atlanta, GA 30306
404.905.2225
bspears@civil-rights.law
jeff@civil-rights.law

## CERTIFICATE OF SERVICE

I certify that I served the foreign foregoing document by filing the same with the Clerk of using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

This 19th day of November, 2021.

**Jeff Filipovits**
Georgia Bar No. 825553
Spears & Filipovits, LLC
1126 Ponce de Leon Ave.
Atlanta, GA 30306
404.905.2225
jeff@civil-rights.law