IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

D.P, by and through her Mother,
SPARKLE STIDWELL, as next
friend,

      Plaintiff,

v.

YASIN ABDULAHAD,

      Defendant.

CIVIL ACTION FILE

NO. 1:19-CV-401-MHC

## ORDER

This case comes before the Court on Defendant Yasin Abdulahad

("Abdulahad")'s Motion for Summary Judgment ("Def.'s Mot. for Summ. J.")

[Doc. 96].

## I.   BACKGROUND[1]

---

[1] At the outset, the Court notes that as this case is before it on Abdulahad's Motion for Summary Judgment, the Court views the evidence presented by the parties in the light most favorable to Plaintiff and has drawn all justifiable inferences in favor of Plaintiff. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Sunbeam TV Corp. v. Nielsen Media Rsch., Inc., 711 F.3d 1264, 1270 (11th Cir. 2013). In addition, the Court has excluded assertions of fact that are immaterial or presented as arguments or legal conclusions or any fact not supported by citation to evidence (including page or paragraph number). LR 56.1B(1), NDGa. Further, the Court accepts as admitted those facts in Abdulahad's Statement of Undisputed Material Facts ("Def.'s SUMF") [Doc. 96-

The above-styled wrongful death action is brought by D.P. ("Plaintiff"), the minor child of Deaundre Phillips ("Phillips") and her mother, Sparkle Stidwell, arising out of the fatal shooting of Phillips on January 26, 2017.  Compl. [Doc. 1] ¶¶ 1, 6.  Phillips and two friends, Yteria Maeberry ("Maeberry") and Rodrick Hart ("Hart"), arrived at the Atlanta Police Department Annex located at 3493 Lee Hollowell Parkway, NW, Atlanta, Georgia ("APD Annex") at approximately 7:35 P.M. on the evening of January 26, 2017.  Pl.'s Resp. to Def.'s SUMF ¶ 1; Video from Jan. 26, 2017, attached as Ex. 3 to Def.'s Mot. for Summ. J. ("Annex Video") [Doc. 98] at 19:35:17.  Maeberry and Hart exited a Chevrolet Malibu to enter the APD Annex while Phillips remained in the vehicle's front passenger seat, with the engine running.  Pl.'s Resp. to Def.'s SUMF ¶ 2; Annex Video at 19:35:41; Dep. Tr. of El-Malik Robeson-El ("Robeson-El") (Mar. 16, 2021) ("Robeson-El Dep.") [Doc. 96-4] at 114.

---

1], that have not been specifically controverted with citation to the relevant portions of the record.  See LR 56.1B(2), NDGa (deeming admitted all facts which are not specifically controverted with citation to the relevant portions of the record); Pl.'s Resp. to Def.'s Statement of Material Facts ("Pl.'s Resp. to Def.'s SUMF") [Doc. 104-16].

Approximately nine minutes later, at 7:44 P.M., Abdulahad and his partner, Robeson-El, arrived in an unmarked Dodge Charger and parked one space away from the Chevrolet Malibu where Phillips was sitting. Pl.'s Resp. to Def.'s SUMF ¶¶ 3-4; Annex Video at 19:44:42. Before either Abdulahad or Robeson-El exited their car, Abdulahad told Robeson-El that he observed the individual sitting in the car parked next to them (Phillips) smoking marijuana. Robeson-El Dep. at 110, 117. It was cold outside and the windows in both the Dodge Charger as well as the Chevrolet Malibu were rolled up. Id.; Def.'s Resp. to Pl.'s Statement of Add'l Material Facts ("Def.'s Resp. to Pl.'s MF") [Doc. 110] ¶¶ 13-14. Robeson-El did not witness Phillips smoking marijuana nor did he smell it at that time. Robeson-El Dep. at 110-12. Upon exiting the Dodge Charger at 7:46 P.M., Robeson-El walked directly over to the side of the Chevrolet Malibu in which Phillips was sitting while Abdulahad initially walked toward the entrance of the APD Annex. Robeson-El Dep. at 117-18; Pl.'s Resp. to Def.'s SUMF ¶¶ 8, 10; Enhanced Annex Video [Doc. 104-3] at 19:45:45 to 19:46:11. However, Abdulahad turned around and took a position behind Robeson-El to observe the encounter between Robeson-El and Phillips. Id.

Robeson-El approached the window of the parked Chevrolet Malibu and told Phillips to roll down his window, and Phillips complied. Robeson-El Dep. at

120-21; Def.'s Resp. to Pl.'s MF ¶ 26.  Phillips denied that he was smoking

marijuana.  Robeson-El Dep. at 121, 124; Pl.'s Resp. to Def.'s SUMF ¶ 13; Def.'s

Resp. to Pl.'s MF ¶ 28.  It was at this point in time, when Robeson-El was standing

alongside the parked Chevrolet Malibu with the window rolled down, that he

smelled marijuana.  Robeson-El Dep. at 124.  Robeson-El also observed that

Phillips was "fidgeting" with his hands such that Robeson-El could not see his

hands prompting Robeson-El to ask Phillips to step out of the vehicle for the

purposes of officer safety.  Id. at 122-25; Pl.'s Resp. to Def.'s SUMF ¶ 14.  Phillips

complied with Robeson-El's request and stepped out of the car.  Robeson-El Dep.

at 125; Enhanced Annex Video at 19:47:12.  At no point in time did Robeson-El

ever observe anything in Phillips's hands.  Robeson-El Dep. at 35, 121-25; Def.'s

Resp. to Pl.'s MF ¶¶ 30, 41.

Less than forty seconds after Phillips exited the Chevrolet Malibu, a struggle

between Phillips, Robeson-El, and Abdulahad ensued during which Phillips pushed

Robeson-El in the chest with his hands.[2]  Robeson-El Dep. at 30, 92, 133-35;

Enhanced Annex Video at 19:47:37.  Robeson-El told Abdulahad to hold Phillips

---

[2] While Plaintiff does not dispute that he placed his hands on Robeson-El's chest,
he claims that he did not "push" him because his actions did not cause Robeson-El
to move.  See Def.'s Resp. to Pl.'s MF ¶¶ 44-45.  The Court finds this to be a
distinction without a difference.

so Robeson-El could use his radio, Phillips then pushed Robeson-El, and Abdulahad attempted to grab Phillips. Robeson-El Dep. at 91-92, 133; Enhanced Annex Video at 19:47:37. The struggle ultimately resulted in Phillips reentering the Chevrolet Malibu and Abdulahad following behind Phillips into the vehicle. Robeson-El Dep. at 75-76, 133-35; Enhanced Annex Video at 19:47:42; Def.'s Resp. to Pl.'s MF ¶ 54. Phillips made his way across the center console to the driver-side of the Chevrolet Malibu, and the car then pulled away with both Philips and Abdulahad in it. Def.'s Resp. to Pl.'s MF ¶ 60; Robeson-El Dep. at 75-77; Enhanced Annex Video at 19:47:47. The entirety of Abdulahad's body was inside the Chevrolet Malibu and the passenger side door of the car was fully closed as Phillips drove away. Def.'s Resp. to Pl.'s MF ¶¶ 62-63; Robeson-El Dep. at 77; Enhanced Annex Video at 19:47:47. From the time Robeson-El approached the Chevrolet Malibu to the time Phillips drove it away, approximately two minutes elapsed. Enhanced Annex Video at 19:45:45 to 19:47:47.

Phillips drove the Chevrolet Malibu to another parking lot at the APD Annex where it ultimately came to a complete stop and Abdulahad exited the car on the passenger side. Def.'s Resp. to Pl.'s MF ¶¶ 64-65, 103; Robeson-El Dep. at 75; Dep. Tr. of Josh Ellis (June 4, 2021) ("Ellis Dep.") [Doc. 96-6] at 56-57. At some point after the Chevrolet Malibu left the parking spot with Abdulahad in the

passenger side of the vehicle, Abdulahad fired a single shot and fatally injured

Phillips. Pl.'s Resp. to Def.'s SUMF ¶ 19. After the Chevrolet Malibu drove

away, Robeson-El did not hear any activity coming from inside the car, nor could

he see any activity inside the car. Robeson-El Dep. at 29, 74-75, 90, 140, 145,

147-48; Def.'s Resp. to Pl.'s MF ¶ 61. After Abdulahad exited the Chevrolet

Malibu, he told Robeson-El that he shot Phillips and that Phillips had a gun.

Robeson-El Dep. at 60-61; Def.'s Resp. to Pl.'s MF ¶ 105.

The Georgia Bureau of Investigation ("GBI") received a request from the

Atlanta Police Department ("APD") to investigate the facts and circumstances

surrounding the death of Phillips on the evening of January 26, 2017. Pl.'s Resp.

to Def.'s SUMF ¶ 22; Dep. Tr. of David Jones (June 4, 2021) ("Jones Dep.") [Doc.

102-5] at 11, 14. The GBI Investigation revealed that (1) there was a cellophane

bundle with 1.24 grams of marijuana in Phillips's jacket at the time he was shot,

(2) marijuana was detected in Phillips's system from a blood test, and (3) there was

a handgun partially beneath the passenger seat of the Chevrolet Malibu. Ellis Dep.

53-55; Jones Dep. at 42 (indicating that marijuana was found in Phillips's jacket

pocket). The GBI Investigation also confirmed that Phillips did not exit the APD

Annex parking lot while driving the Chevrolet Malibu, but instead drove past the

exit toward a hill and fence. Id. at 56-57.

Abdulahad has not provided any statement regarding the facts of this case, electing to assert his Fifth Amendment privilege against self-incrimination.  See Pl.'s Br. at 8, n. 39 ("Detective Abdulahad has consistently declined to give statements related to this incident invoking his Fifth Amendment privilege against self-incrimination."); Def.'s Resp. to Pl.'s MF ¶¶ 20-22, 25, 34-35, 55-59, 66-102, 106-07, 131-33.

Based on the forgoing facts, Plaintiff brought the above-styled lawsuit against Abdulahad pursuant to 42 U.S.C. § 1983 alleging that "[t]he actions of the Defendant constituted a breach of the guarantee of the Fourth Amendment to the Constitution of the United States – said actions being both an unreasonable search and seizure."  Compl. ¶ 44.  Plaintiff clarifies in her brief in response to Defendant's Motion for Summary Judgment that the Complaint "states two claims: that Officer Abdulahad effected an illegal Terry[3] stop by detaining Phillips without reasonable suspicion, and that Abdulahad used excessive force when he shot and killed Phillips."  Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ J. ("Pl.'s Resp.") [Doc. 104] at 7-8.

---

[3] Terry v. Ohio, 392 U.S. 1, 30 (1968).

## II.   USE OF GBI MATERIALS

Plaintiff objects to Abdulahad's reliance on the GBI Investigative Summaries[4] in support of his Motion for Summary Judgment.[5]  See Pl.'s Notice of Obj. to Consideration of Def.'s Doc. 96-2 ("Pl.'s Obj. to GBI reports") [Doc. 103]; Pl.'s Resp. to Def.'s SUMF ¶¶ 1, 19, 29.  Specifically, Plaintiff objects to any reliance on any statements made by Abdulahad or others that are memorialized in any GBI report because such statements are hearsay and not admissible for the truth of the matters asserted therein.  Pl.'s Obj. to GBI reports at 1-8; see also Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ J. ("Pl.'s Resp.") [Doc. 104] at 17. Abdulahad argues that this objection is unfounded as Abdulahad does not rely on any statement made to GBI investigators.  See generally, Def.'s Mot. for Summ. J.; Def.'s Reply in Supp. of his Mot. for Summ J. [Doc. 111]; see also Def.'s Resp. in Opp'n to Pl.'s Obj. to GBI reports [Doc. 109] at 2-3 ("Detective Abdulahad referred to the GBI's investigative findings rather than inadmissible hearsay on

---

[4] By "GBI Investigative Summaries," the Court is referring collectively to the materials authored by GBI and submitted by Abdulahad as Exhibit A in support if his Motion for Summary Judgment [Doc. 96-2].

[5] Plaintiff notes that Abdulahad's Statement of Undisputed Material Facts rely on three specific investigative summaries found on pages 1-18, 4, and 89-95.  Pl.'s Obj. to GBI reports at 2.

each of the three occasions that he referenced the Investigative Summary [in his Statement of Undisputed Material Facts]," and noting that "[e]ach reference referred to an investigative finding supported by other evidence in the record.").

The Court finds Plaintiff's objection to be unfounded. Abdulahad cites to the GBI Investigative Summaries at 1-18 in support of his asserted fact that Phillips, Maeberry, and Hart arrived at the APD Annex at 7:35 P.M. on January 26, 2017. Pl.'s Resp. to Def.'s SUMF ¶ 1. Plaintiff does not dispute this fact and it does not rely on any statement made by anyone to GBI investigators. Id. Abdulahad cites to the GBI Investigative Summaries at 4 in support of his asserted fact that after Phillips and Abdulahad left the parking lot, Abdulahad fired a single shot and killed Phillips. Pl.'s Resp. to Def.'s SUMF ¶ 19. Plaintiff does not dispute this fact and it is supported by other evidence in the record, including the GBI agent's finding of a single shell casing on the front passenger seat of the Chevrolet Malibu. Id.; GBI Investigative Summaries at 4. Finally, Abdulahad cites to the GBI Investigative Summaries at 89-95 for the proffered fact that "[a]t the close the investigation, the GBI failed to find any legal or procedural wrongdoing on the part of Detective Abdulahad." Pl.'s Resp. to Def.'s SUMF ¶ 29. Pretermitting any analysis of whether the cited portion of the GBI Investigative Summaries actually supports Abdulahad's purported fact, the Court

finds that this alleged "fact" is immaterial to any issue in the present Motion for
Summary Judgment and has not relied that portion of the GBI Investigative
Summaries.

Plaintiff also objects to the introduction of or reliance upon the GBI
Investigative Summaries to the extent it permits Abdulahad to "tell his side of the
story" while he denies Plaintiff the opportunity to cross-examine him by claiming
the Fifth Amendment privilege against self-incrimination. Pl.'s Obj. to GBI
reports at 8-13. Plaintiff argues that a portion of the GBI Investigative Summaries
(pages 64-68) narrates what Abdulahad told GBI investigators about the incident in
question. Id. Plaintiff acknowledges that Abdulahad has not cited to this portion
of the GBI Investigative Summaries, but is compelled to lodge the objection in
case the Court considers that portion of the GBI Investigative Summaries. This
objection is unfounded because the Court does not rely on that (or any) portion of
the GBI Investigative Summaries in adjudicating Abdulahad's Motion for
Summary Judgment. Accordingly, Plaintiff's objection to Abdulahad's reliance on
the GBI Investigative Summaries in support of his Motion for Summary Judgment
is **OVERRULED**.

## III.  LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the district court in considering whether to grant summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).

If a movant meets its burden, the party opposing summary judgment must present evidence demonstrating a genuine issue of material fact or that the movant is not entitled to judgment as a matter of law.  Celotex, 477 U.S. at 324.  In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that opposing party.  Anderson, 477 U.S. at 255; see also Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th

11

Cir. 1999).  A fact is "material" only if it can affect the outcome of the lawsuit

under the governing legal principles.  <u>Anderson</u>, 477 U.S. at 248.  A factual dispute

is "genuine" if the evidence would permit a reasonable jury to return a verdict for

the nonmoving party.  <u>Id.</u>  "If the record presents factual issues, the court must not

decide them; it must deny the motion and proceed to trial."  <u>Herzog</u>, 193 F.3d at

1246.  But, "[w]here the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party," summary judgment for the moving party is

proper.  <u>Matsushita</u>, 475 U.S. at 587.

## IV.  DISCUSSION

Abdulahad argues that summary judgment is appropriate in this case because

(1) there was reasonable articulable suspicion to briefly detain Phillips, and (2) he

is entitled to qualified immunity on Plaintiff's excessive force claim.  Def.'s Mot.

for Summ. J. at 7-14.  Plaintiff argues that summary judgment should be denied

because the determination of whether Abdulahad unlawfully seized Plaintiff and

used excessive force rests on disputed facts.  Pl.'s Resp. at 8-25.

### A.   To the Extent There was a <u>Terry</u> Stop, the Undisputed Evidence Reveals That it Was Lawful.

Paragraph 44 of the Complaint includes a § 1983 claim against Abdulahad

for effectuating an unlawful <u>Terry</u> stop of Phillips without reasonable suspicion.

<u>See Id.</u> at 7-8.  "It is well established that section 1983 itself creates no substantive

12

rights; it merely provides a remedy for deprivations of federal rights established elsewhere." Wideman v. Shallowford Cmty. Hosp., Inc., 826 F.2d 1030, 1032 (11th Cir. 1987) (citing City of Okla. City v. Tuttle, 471 U.S. 808, 816 (1985)).  To sustain a cause of action based on section 1983, a litigant must establish two elements: (1) that he suffered a deprivation of a right, privilege or immunity protected by the U.S. Constitution or federal law, and (2) that the act or omission causing the deprivation was committed by a person acting under color of law. Arrington v. Cobb Cnty., 139 F.3d 865, 872 (11th Cir. 1998); Emory v. Peeler, 756 F.2d 1547, 1554 (11th Cir. 1985); Dollar v. Haralson Cnty., 704 F.2d 1540, 1542-43 (11th Cir. 1983).  "In any § 1983 action, a court must determine whether the Plaintiff has been deprived of a right secured by the Constitution and laws of the United States." Glenn v. Brumby, 663 F.3d 1312, 1315 (11th Cir. 2011) (internal quotation and citation omitted); see also 42 U.S.C. § 1983.  "Absent the existence of an underlying constitutional right, no section 1983 claim will lie." Wideman, 826 F.2d at 1032.

Plaintiff argues that "Officer Abdulahad effected an illegal Terry stop by detaining Phillips without reasonable suspicion." Pl.'s Resp. at 7.  Specifically, Plaintiff asserts that Phillips was subject to an unlawful Fourth Amendment seizure when Officers Robeson-El and Abdulahad approached the vehicle and "ordered

him to exit the vehicle" and that Phillips was "not free to leave" once he complied with the order and stood alongside the car.[6] Id. at 8. The undisputed evidence reveals that, to the extent there was a brief investigatory detention, it was supported by reasonable articulable suspicion; specifically, Abdulahad observed Phillips smoking marijuana which he communicated to Robeson-El, and then Robeson-El smelled marijuana once he was alongside the vehicle and Phillips rolled down the window.

> [There are] three categories of police-citizen encounters which invoke the fourth amendment: police-citizen communications involving no coercion or detention; brief seizures or investigative detentions; and full-scale arrests. United States v. Espinosa–Guerra, 805 F.2d 1502, 1506 (11th Cir.1986). The first category of police-citizen encounters fails to implicate fourth amendment scrutiny. The second category, investigative detentions, involves reasonably brief encounters in which a reasonable person would have believed that he or she was not free to leave. Terry v. Ohio, 392 U.S. 1 (1968) (Supreme Court carved out a narrow exception to the probable cause requirement, allowing police to detain a suspect based upon reasonable suspicion for the purpose of an investigative detention). In order to justify a fourth amendment seizure, the government must show a reasonable and articulable suspicion that

---

[6] There is no evidence before the Court that Abdulahad played any role in the activity comprising what Plaintiff contends was an unlawful Terry stop other than standing behind his partner, Robeson-El. Accordingly, to hold Abdulahad responsible for actions that Plaintiff contends comprise an unlawful Terry stop, the Court would have to impute the actions of Robeson-El to Abdulahad and Plaintiff has not provided any legal support for this proposition. Nevertheless, for the purposes of adjudicating the present Motion for Summary Judgment, the Court will assume that Robeson-El's actions in asking Phillips to exit the car can be imputed to Abdulahad.

the person has committed or is about to commit a crime. Finally, if the totality of circumstances indicates that an encounter has become too intrusive to be classified as an investigative detention, the encounter is a full-scale arrest, and the government must establish that the arrest is supported by probable cause.

United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989) (internal citations omitted).

Plaintiff's characterization of the events that she contends comprise an unlawful Terry stop is not consistent with the undisputed evidence in this case. First, it is undisputed that Robeson-El "ask[ed]" Phillips to step out of the car and that it was a "request." Robeson-El Dep. at 123, 125-26. The undisputed evidence also indicates that once Phillips initially exited the Chevrolet Malibu and was standing alongside the car, he was free to leave:

> Q:   That being the case then, you never told Phillips that he could not leave, did you?
>
> A:   No.
>
> Q:   Not having told him that he could not leave, as far as what you had communicated to him, he was still free to go; wasn't he?
>
> A:   Yes.

Robeson-El Dep. at 133. However, at some point soon thereafter, Robeson-El instructed Abdulahad to hold Phillips while Robeson-El "pulled out on the radio,"

which meant that Robeson-El was informing the dispatcher of his location and what was going on. Id. at 36, 124-127.

Assuming *arguendo* that the actions of Robeson-El approaching the Chevrolet Malibu, talking to Phillips, and asking him to exit the vehicle escalated from a consensual encounter involving no coercion or detention to a brief seizure or an investigative detention (i.e., a Terry stop), the Court concludes that the evidence in this case, viewed in a light most favorable to Plaintiff, reveals that the investigative detention was supported by the requisite reasonable suspicion. The undisputed evidence is that, prior to approaching Phillips, Robeson-El was informed by Abdulahad that Abdulahad witnessed Phillips smoking marijuana while sitting in the parked Chevrolet Malibu. Robeson-El Dep. at 110, 117. This observation was confirmed when Robeson-El subsequently smelled marijuana once he approached the Chevrolet Malibu and Phillips rolled down the passenger-side window. Id. at 124. This undisputed evidence is sufficient reasonable suspicion to support a Terry stop. See United States v. White, 593 F.3d 1199, 1203 (11th Cir. 2010) ("[T]he smell of marijuana alone may provide a basis for reasonable suspicion for further investigation of possible criminal conduct, the initial stop was valid."). Further, "[d]uring a lawful traffic stop, officers also may take steps that are reasonably necessary to protect their personal safety, including

16

requiring the driver and passengers to exit the vehicle as a matter of course."

United States v. Spoerke, 568 F.3d 1236, 1248 (11th Cir. 2009) (internal quotation

and citation omitted).  The undisputed evidence is that Robeson-El took steps to

preserve his safety when he asked Phillips to step out of the car after Phillips

started fidgeting with his hands such that Robeson-El could not see them.  See

Robeson-El Dep. at 122-25; Pl.'s Resp. to Def.'s SUMF ¶ 14.

Plaintiff erroneously argues that the "sole justification" for the initial seizure

was "the smell of marijuana" and "Abdulahad's statement that Phillips's car

smelled like marijuana."  Pl.'s Resp. at 9.  The undisputed evidence is that

Robeson-El initially approached the Chevrolet Malibu with Phillips in the

passenger seat after Abdulahad observed, not smelled, Phillips smoking marijuana.

Robeson-El Dep. at 110, 117.  Plaintiff does not address Robeson-El's undisputed

testimony that Abdulahad told Robeson-El he saw Phillips smoking marijuana.

The undisputed evidence is also that Robeson-El, not Abdulahad, smelled the

marijuana and only after Phillips rolled down the passenger window.  Robeson-El

Dep. at 124.  Plaintiff does not address Robeson-El's undisputed testimony that he

smelled marijuana after he approached the Chevrolet Malibu and Phillips rolled

down the window.  Plaintiff argues that Abdulahad could not have smelled

marijuana while still inside the Dodge Charger and that "a jury could find that

17

Abdulahad fabricated the basis for Phillips['s] initial seizure." Pl.'s Resp. at 9-12. However, Plaintiff's straw man argument that Abdulahad fabricated evidence that he smelled marijuana is based upon a mischaracterization and omission of the salient evidence in this case; namely, that Robeson-El was informed that his partner observed Phillips smoking marijuana and Robeson-El subsequently smelled the marijuana himself when Phillips rolled down the window of the Chevrolet Malibu.[7]

Examining the totality of the circumstances, based on the evidence before the Court viewed in a light most favorable to Plaintiff, the Court finds that Robeson-El and Abdulahad had reasonable suspicion to support the investigatory detention of Phillips. White, 593 F.3d at 1203; see also Bryan v. Spillman, 217 F.

---

[7] The evidence proffered by Plaintiff from Hart, the driver of the Chevrolet Malibu, that Hart "did not have any marijuana in [his] possession," "had no knowledge of any kind that there was any marijuana in the car," and that "[a]t the time that [he] got out of the car, there was no smell of marijuana outside the car" does not create an issue of fact with regard to (1) Abdulahad's observation that he saw Phillips smoking marijuana or (2) Robeson-El's testimony that he smelled marijuana once he was next to the Chevrolet Malibu and Phillips rolled down the window, both of which occurred after Hart went inside the APD Annex. See Aff. of Roderick Hart (Nov. 10, 2020) [Doc. 104-1] ¶¶ 7, 9. Likewise, the testimony from the paramedic who arrived at the scene after the shooting, that he could not recall whether he smelled marijuana, does not create an issue of fact because it does not speak to what Robeson-El smelled prior to the shooting. Dep. Tr. Captain Leviticus Glover (Aug. 13, 2021) [Doc. 102-4] at 40.

App'x 882, 885 (11th Cir. 2007) (affirming the grant of summary judgment on plaintiff's false-arrest claim finding that "after smelling marijuana, Spillman had reasonable, articulable suspicion to detain Bryan.").[8]

Viewing the evidence in a light most favorable to Plaintiff and based on the totality of circumstances that Plaintiff contends amounted to an unlawful Terry stop, no reasonable juror could find that the officers' actions were not supported by articulable reasonable suspicion. Accordingly, there was no constitutional deprivation that could support a Section 1983 claim in this case based on an alleged unlawful Terry stop. For this reason, Abdulahad is entitled to summary judgment on Plaintiff's Section 1983 claim that Abdulahad detained Phillips without reasonable suspicion.

---

[8] Alternatively, because the undisputed evidence establishes that Robeson-El and Abdulahad had arguable reasonable suspicion, Abdulahad is entitled to qualified immunity on Plaintiff's claim that there was an unlawful investigatory detention. To comply with the Fourth Amendment, "a traffic stop must be supported by an officer's reasonable suspicion, that is a particularized and objective basis for suspecting the person stopped of criminal activity." United States v. Wilson, 979 F.3d 889, 908 (11th Cir. 2020). However, "[w]hen an officer asserts qualified immunity, the issue is not whether reasonable suspicion existed in fact, but whether the officer had arguable reasonable suspicion to support an investigatory stop." Jackson v. Sauls, 206 F.3d 1156, 1166 (11th Cir. 2000).

**B.**     **Disputed Issues of Material Fact Preclude Summary Judgment on Plaintiff's Excessive Force Claim.**

Abdulahad claims he is entitled to qualified immunity on Plaintiff's excessive force claim.  "Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Sherrod v. Johnson, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To claim qualified immunity, a defendant must show that he was performing a discretionary function.  Moreno v. Turner, 572 F. App'x 852, 855 (11th Cir. 2014) (citing Whittier v. Kobayashi, 581 F.3d 1304, 1308 (11th Cir. 2009)).  There is no dispute that Abdulahad was acting in the scope of his discretionary authority in this case.  See Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (stating that there "can be no doubt" that the city police officer was acting within the scope of his discretionary authority when arresting the plaintiff); Cottam v. City of Wildwood, 750 F. App'x 791, 793 (11th Cir. 2018) (finding that the officer "was acting within the scope of his discretionary authority when he stopped and arrested" the plaintiff).

"Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply."  Edwards v. Shanley,

666 F.3d 1289, 1294 (11th Cir. 2012) (quoting Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009)).  A plaintiff demonstrates that qualified immunity does not apply by showing: "(1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged violation." Whittier, 581 F.3d at 1308.  A constitutional right is clearly established "only if its contours are 'sufficiently clear that a reasonable official would understand what he is doing violates that right.'" Vaughn v. Cox, 343 F.3d 1323, 1332 (11th Cir. 2003) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from excessive force during the course of a criminal apprehension." Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009) (citations omitted).  "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989). An officer may only use deadly force during an arrest "to dispel a threat of serious physical harm to either the officer or others." Singletary v. Vargas, 804 F.3d 1174, 1181 (11th Cir. 2015); Robinson v. Arrugueta, 415 F.3d 1252, 1256 (11th Cir.

2005) (holding officer may use deadly force only against person officer perceives as posing imminent risk of serious physical harm to officer or others).

Whether the force was "reasonable" "requires balancing of the individual's Fourth Amendment interests against the relevant government interests." Cnty. of Los Angeles v. Mendez, 137 S. Ct. 1539, 1546 (2017) (citing Graham, 490 U.S. at 396). "The operative question in excessive force cases is 'whether the totality of the circumstances justifie[s] a particular sort of search or seizure.'" Id. (quoting Tennessee v. Garner, 471 U.S. 1, 8-9 (1985)). As the Supreme Court explained in Mendez,

> The reasonableness of the use of force is evaluated under an objective inquiry that pays careful attention to the facts and circumstances of each particular case. And the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Excessive force claims . . . are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred. That inquiry is dispositive: When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim.

Id. at 1546-47 (citations and quotations omitted).

The Eleventh Circuit has stated that "[i]n deciding whether a police officer used excessive force, we pay 'careful attention to the facts and circumstances' of the case, 'including the severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Morton v. Kirkwood, 707 F.3d 1276, 1281 (11th Cir. 2013) (citing Connor, 490 U.S. at 396). Importantly, a court "must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal." Crosby v. Monroe City, 394 F.3d 1328, 1334 (11th Cir. 2004). The court must recognize that these split-second decisions occur "in circumstances that are tense, uncertain, and rapidly evolving." Graham, 490 U.S. at 397. A court may not assess the reasonableness of an officer's actions "with the 20/20 vision of hindsight." Id., 490 U.S. at 396; see also Hadley, 526 F.3d at 1330 ("[E]xcessive force is judged solely on an objective basis."). Finally, the Eleventh Circuit has held that an officer may use deadly force against a driver who is using a vehicle to threaten the officer's life. Thomas v. Moody, 653 F. App'x 667, 672 (11th Cir. 2016); but see Underwood v. City of Bessemer, 11 F.4th 1317, 1330 (11th Cir. 2021) (holding that a reasonable jury could find that the defendant driving a car at a slow rate of speed did not pose a threat of serious physical harm to the officers or others).

Abdulahad argues that it was reasonable to use deadly force against Philips because Abdulahad was an unwilling passenger in a car that was headed toward a hill and a fence and where the driver was in arm's reach of a firearm and Abdulahad made a split-second decision to use deadly force to prevent serious bodily injury to himself. Def.'s Mot. for Summ. J. at 12-14. The problem with Abdulahad's position is that there is no evidence in the record to support it. In particular, Abdulahad has presented no evidence about what he perceived, whether he thought he or anyone else was in danger from Phillips driving the car, or whether Abdulahad even saw a firearm on the floorboard of the car before he shot Phillips. The only evidence before the Court is that Abdulahad followed Phillips into the car, that the car drove away and, that at some point thereafter, Abdulahad fired his weapon, killing Phillips. Additionally, Abdulahad has refused to testify and instead invoked his Fifth Amendment privilege against self-incrimination in response to probative evidence offered against him.[9]

---

[9] "The general rule is that an adverse inference may be drawn against a party in a civil action when he refuses to testify in response to probative evidence offered against him." S.E.C. v. Scherm, 854 F. Supp. 900, 904 (N.D. Ga. 1993) (citing Baxter v. Palmigiano, 425 U.S. 308, 318 (1976) (recognizing the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them)).

Based on the evidence viewed in a light most favorable to Plaintiff, the Court concludes that Abdulahad is not entitled to qualified immunity as a matter of law because there is a genuine disputed issue of material fact as to whether Abdulahad's use of force was reasonable under the circumstances.  Therefore, the Court **DENIES** Abdulahad's Motion for Summary Judgment as to Plaintiff's claim that Abdulahad used excessive force when he shot and killed Phillips.

## V.    CONCLUSION

For the foregoing reasons, Defendant Yasin Abdulahad's Motion for Summary Judgment [Doc. 96] is **GRANTED IN PART AND DENIED IN PART**.  The Motion is **GRANTED** as to Plaintiff's § 1983 claim based upon an alleged unlawful investigatory detention, and **DENIED** as to Plaintiff's claim that Abdulahad used excessive force when he shot and killed Phillips.

It is further **ORDERED** that the parties shall file a consolidated pre-trial order within thirty (30) days of the date of this Order related to the remaining issue in this case; namely the excessive force claim against Abdulahad.  <u>See</u> LR 16.4, NDGa.

   **IT IS SO ORDERED** this 6th day of June, 2022.


_____
MARK H. COHEN
United States District Judge